29 C.C.P.A. (Patents)

### BENSON v. STEENSTRUP.

### Patent Appeal No. 4573.

Court of Customs and Patent Appeals.

March 23, 1942.

LENROOT, Associate Judge, dissenting.

Barnes, Kisselle, Laughlin & Raisch, of Detroit, Mich. (John M. Kisselle and Robert A. Choate, both of Detroit, Mich., of counsel), for appellant.

Harry E. Dunham, of Schenectady, N. Y. (William G. Edwards, Jr., of Schenectady, N. Y., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority to the party Steenstrup in an interference declared between patent applications of the party Benson and the party Steenstrup relating to refrigerating apparatus, the particular subject matter involved in the interference proceeding being that defined in a single count which reads: "An evaporator comprising a pair of elements of sheet material secured together to provide a heat transfer wall, an inlet for receiving liquid refrigerant and an outlet for vaporized refrigerant; said evaporator having a conduit embossed in the material and extending back and forth across a face of said wall and connected to said inlet and said outlet, said conduit being enlarged at spaced intervals from said inlet to said outlet to provide a series of substantially identical reservoirs for trapping and retaining quantities of refrigerant in pools below the path of, and in communication with, the streams of gaseous refrigerant flowing towards said outlet."

The count was formulated by the Primary Examiner and suggested to the respective parties for interference purposes as embracing subject matter common to both defined, respectively, in claim 5 of the Steenstrup application and claim 27 of the Benson application.

The application of Benson was filed February 3, 1937. That of Steenstrup was filed April 17, 1937. Both are original applications. It was incumbent upon Steenstrup as the junior party to establish priority by a preponderance of the evidence in order to prevail.

Certain factual matters are not in dispute and, because of this, it is unnecessary for us to set forth a review of the record at length.

The party Benson was accredited with the date of September 30, 1936, for conception but was limited to his filing date of February 3, 1937, for reduction to practice. He accepts those dates.

The party Steenstrup was not awarded any specific date for conception independent of the date awarded him for reduction to practice. He introduced in evidence as his Exhibit A, certain drawings dated December 13, 1934, and, as his Exhibit B, a "production drawing," or blueprint, of a device found by the tribunals of the Patent Office and conceded by the party Benson to have been completed and tested in April, 1935. The device as illustrated in the blueprint, Exhibit B, is agreed by the party Benson to conform to the drawings of Exhibit A, with which latter Figs. 4, 5, and 6 of Steenstrup's application drawings correspond.

The brief before us on behalf of the party Benson states:

"Benson, the Senior party, has proved a conception of September 30, 1936, and is relying on the filing of his application—February 3, 1937—for a constructive reduction to practice.

"Steenstrup, the Junior party, is now relying entirely for priority on a construction shown in his Fig. 4 for which he shows a conception, fabrication and operation by April of 1935. No further evidence has been introduced by Steenstrup as to reduction to practice or diligence. The party Benson, for purposes of record, concedes the existence of Steenstrup's Exhibits A and B of December, 1934, and January, 1935, and concedes the operation of an evaporator as shown by Steenstrup's Fig. 4 on the date above stated."

We here reproduce Figs. 4, 5, and 6 of the drawings of the Steenstrup application, which, as has been indicated, are

in conformity with those shown in his Exhibit A.

evaporator shown in Fig. 4 comprises an air cooling portion 31 and a freezing tray

Fig. 4

Fig. 5.

Fig. 6

Inventor:
Christian Steenstrup,
by *Harry E. Dunham*
His Attorney.

In the specification of Steenstrup's application it is stated:

"In Figs. 4, 5 and 6 I have shown another embodiment of my invention. The shelf 32 at right angles thereto. The shelf 32 is provided with end pieces 33 whereby the evaporator may be secured within a refrigerator cabinet. The air

cooling portion 31 is provided with a refrigerant header 34 and a depending refrigerant circulating conduit 35 communicating at both ends with the header. The header 34 is maintained normally about half filled with liquid refrigerant and the conduit 35 is thereby maintained flooded. The freezing shelf 32 is provided with a sinuous refrigerant circulating conduit 36 and at intervals along the conduit 36 are provided pockets or reservoirs 37 extending downwardly therefrom and in communication therewith. The reservoirs 37 perform the same function as the reservoirs 28 shown on the evaporator of Fig. 1.

"During the operation of the evaporator shown in Fig. 4, liquid refrigerant is admitted to the evaporator from a liquid line 38 and flows through a conduit 39 formed in the evaporator and thence into the shelf conduit 36. Part of the liquid refrigerant is trapped in the reservoirs 37 and the remainder flows with the gaseous refrigerant from conduit 36 through a connection 40 and into the lower end of the passage 35. A circulation of the refrigerant in the passage 35 is produced by the refrigerant admitted thereto from the conduit 40. Gaseous refrigerant is withdrawn from the header above the level of liquid refrigerant therein through a suction line 41. During the idle periods of the refrigerating machine when no refrigerant is being admitted to the evaporator from the line 38 the liquid refrigerant trapped in the reservoirs 37 is available for cooling articles such as freezing trays placed on the shelf 32."

We quote the following from the decision of the board:

"It is to be noted that the count covers an evaporator comprising:

"(1) A pair of elements of sheet material seamed together to provide a heat transfer wall

"(2) An inlet for receiving liquid refrigerant and

"(3) An outlet for vaporized refrigerant said evaporator being a conduit embossed—flowing towards said outlet.

"It is argued by the party Benson that the count will not read on this form, due to the presence of the header 34 and conduit 35. He points out that, according to the testimony, the header will contain some liquid as well as the conduit 35. He states that in the evaporator art it is well-known that liquid refrigerant cannot be present in the outlet of the evaporator as it will flow into the compressor and ruin it. He argues, therefore, that there is not present in this form, 'an outlet for vaporized refrigerant,' as required by the count.

"It seems to us that the count, when read as broadly as its language will reasonably permit, will clearly read on this form of the invention shown in Fig. 4 and on Exhibit B. We think that the pipe 40 can be regarded as responding to the element in the count, 'an outlet for vaporized refrigerant,' even though both liquid and vaporized refrigerant pass through it. It is an outlet for vaporized refrigerant, whether or not there is present any liquid refrigerant in the header. The testimony of Streenstrup is to the effect that the header was not full of liquid but only partly so (Steenstrup record, pp. 12 and 13). Hence the pipe 40 will not be full of liquid. Furthermore, Steenstrup stated in the testimony that the vapor passes through the liquid to the compressor. From what has been stated, we think that there can be no question but that the pipe 40 can be regarded as being the outlet for vaporized refrigerant from the evaporator.

"The party Steenstrup has also argued that the parts 34, 35, 40, 41 may be regarded a second evaporator in series with the first evaporator 36 and hence may be ignored in reading the count on the horizontal evaporator 36. We think that this view can also be adopted, if necessary, to read the count on Fig. 4. This would also be a reasonable way of reading the count on it."

The brief before us on behalf of the party Benson states:

"The issues involved here are: first, whether the embodiment in Steenstrup's Fig. 4 will support the count, and, second, whether the invention covered by the count has been reduced to practice by Steenstrup. Since Steenstrup's evidence is limited to Fig. 4, he cannot prevail over Benson's filing date unless such Fig. 4 is held to support the count, and has been reduced to practice. The Steenstrup Fig. 4 is shown on page 10B of the Record. It is an evaporator having an inlet 38 and outlet 41. The cooling passages consist of a shelf 32 having a sinuous passage 36 with pockets 37 formed therein and leading to cooling passages 40 and 35 and a flooded header 34."

So, as we understand the contentions of Benson, he does not question Steenstrup's right to make the count so far as the disclosures of his application are concerned, but insists that the embodiment disclosed in Figs. 4, 5, and 6 does not support it, wherefore the constructing and testing of the device depicted in Steenstrup's Exhibit B may not be held to constitute a reduction to practice of the invention defined in the count.

■ It will be observed from that part of the decision of the board, above quoted, that it interpreted the count "as broadly as its language will reasonably permit." The party Benson recognizes this as "the accepted rule" in an interference proceeding but invokes the corollary of the rule to the effect that limitations expressed in a count may not be ignored, and insists that there are limitations in the count at issue to which the board gave no effect.

The only specific limitation quoted in Benson's brief is "an inlet for receiving liquid refrigerant and an outlet for vaporized refrigerant," but it is argued that when this is read in connection with the specifications of the respective applications involved its meaning is "that there is an outlet leading to the compressor which is not plugged by a liquid seal" and that this creates a second limitation.

No emphasis seems to be placed upon the first element of the quoted limitation, "an inlet for receiving liquid refrigerant." The board did not indicate what element was regarded by it as being the liquid refrigerant inlet. Its discussion of the issue as quoted above began with the "outlet for vaporized refrigerant," and it held that this was met by the pipe 40 shown in Fig. 4 above reproduced. The Examiner of Interferences seems to have held that the inlet element was met by the feature 41, shown in the drawing. The specification of the Steenstrup application above quoted seems to us to teach that the pipe 41 is a suction line for the *withdrawal* from the header of *gaseous* (which we assume means "vaporized") refrigerant, rather than for use as an *inlet* for liquid refrigerant, and that the inlet for the liquid refrigerant is the pipe 38, but whatever may be the fact as to that element, the controversy, in the final analysis, centers about the "outlet for vaporized refrigerant," which was held to have been met by the pipe 40.

It is contended by the party Benson that the pipe 40, which, in his brief, is designated as a "cooling passage" and "an intermediate tube" connecting two parts of the evaporator, is "no more the outlet than the door opening between the kitchen and the dining room is the outlet of a house." Also he contends, in substance, that the pipe 40 "is always filled with liquid" which plugs the pipe with a liquid seal; that it is a "liquid trap" comparable in function to the U trap in toilets; that while "due to the pressure differential here, gases can be pushed through this trap," it was intended by both parties to avoid that "very thing," and that it was the purpose of the examiner in drawing the count to limit it to a structure having "a completely free passageway from the inlet of the evaporator to the outlet."

In the brief and at the oral hearing before us counsel for the party Benson elaborated the contentions thus stated. It is deducible from the decisions of the respective tribunals of the Patent Office that the same arguments were presented before them and that they fully considered them. We, in turn, have given them full consideration and we are not convinced that they are sound.

■ We do not think the board overlooked, disregarded, or failed to give effect to the limitation reading "an inlet for receiving liquid refrigerant and an outlet for vaporized refrigerant." Limitations in counts frequently require interpretation in order to determine their application to devices of which they are a part. In the instant case Benson, in effect, insists that the phrase "an outlet for vaporized refrigerant" be interpreted to mean an outlet free from any liquid refrigerant. The count does not read that way. As we understand the system here involved, a liquid refrigerant is introduced into the evaporator; that in the course of its passage through the evaporator vaporization of at least a part of the liquid takes place, and that a vaporized product results which itself performs a refrigerating function, an outlet being provided for the vaporized refrigerant. There is nothing in the count which requires an outlet for the vaporized refrigerant separate from the liquid refrigerant and we fail to discern error in the board's holding that the pipe 40 can be regarded as responding to "an outlet for vaporized refrigerant," even though both liquid and vaporized refrigerant pass

through it; nor does it seem to us that the fact that some refrigerant in liquid form may be present in the header 34 affects the matter of the pipe 40, being an outlet for the refrigerant when in vaporized form. A fair reading of that part of Steenstrup's specification above quoted seems to us to sustain the soundness of this view.

We fail to find in the authorities cited by the party Benson and emphasized before us any pertinent matter contrary to the view herein expressed.

Not being convinced of error on the part of the board, its decision is affirmed.

Affirmed.

LENROOT, Associate Judge, dissents.